Good afternoon everyone. This is the time for argument in the case of Kohn v. State Bar of California and Mr. Michael. Good afternoon, Your Honors. Good afternoon. Can you keep your voice up just a little bit for those of us that are... Yes, of course. I will try, Your Honor. Good afternoon. My name is Greg Michael. I'm joined here today by my law partner, Dorothy Yamamoto. We represent the appellant, Benjamin Kohn. If the court permits, I'd like to reserve three minutes of my time for rebuttal. All right. Roger Kock. Thank you. The California State Bar should not be allowed to violate federal and state anti-discrimination law with impunity, nor should disabled bar applicants be required to bear alone the harm inflicted by the State Bar's actions. Accordingly, this court should reverse the decision of the district court dismissing Mr. Kohn's claims for three reasons. First, the State Bar is not an arm of the state of California and, therefore, is not entitled to sovereign immunity. So why don't you just jump in and help me out on... I agree. I wasn't really impressed with it, and I'll ask the State Bar about it, that when they say they're going to do better, they recognize, you know, it's not really that comforting when the law requires disabled people to get accommodations, that they're going to try a little bit harder. That's not that comforting. But I'm struggling with HERSH because it expressly states that the 11th Amendment's grant of sovereign immunity borrows monetary relief from state agencies such as California State Bar and Bar Court. And so why isn't that binding on us? Three responses to that, Your Honor. First, the single-sentence reference in HERSH, as well as in Lupert, is dicta because the dispute, excuse me, the issue was not disputed by the parties, and, therefore, it's an offhand remark by the court. It's not a holding. Second, as the State Bar repeatedly emphasizes in its brief, in 2017, significant legislation was passed in California that changed both the structure and the function of the State Bar. So even if the five-factor Mitchell test had been applied to the State Bar, which it has never been, a fresh application would still be warranted because of these change in factual circumstances. And third, to the extent that these are holdings in HERSH or Lupert, the holdings are limited to the context of those cases. And we know that context matters because of this court's decision in Ray v. County of Los Angeles. And here, with HERSH in particular, the court was addressing attorney discipline. That's a very distinct issue from deciding whether or not to accommodate a disabled applicant to the Bar. That kind of relationship with members of the public warrants a different application of the test. Well, I've got three mem dispos in front of me, and, unfortunately, when I looked at them, I was on one of them, which they happened after that. And they basically, one of them's, I think, Joseph v. The State Bar, Pragerson, Levy, and Murguia. That's, I think, the most recent one. No, that's 2014, maybe. Then we've got Vartanian v. The State Bar. I was on that one in 2019, along with two other people. And then we've also got Harithapantu v. State Bar of California, and that was a 2020 case. And they all found, they all said HERSH was dispositive. So that's a little problematic to me. I think it is problematic, Your Honor, and that's exactly why this court should address the issue. Well, address the issue, not in the three-judge panel that you're arguing in front of, but address the issue en banc. No, this panel may address the issue, and the reason is because the statement in HERSH is not actually binding precedent. It's dicta, and, therefore, this court can depart from that dicta and hold. If we disagree with you and find that that's a holding, is there an alternative argument that you can make to reconcile this with Mitchell? Yes, Your Honor, and that returns to the factual change in the circumstances here. The 2017 legislation altered, fundamentally, what the State Bar is, how it functions, how the leadership is appointed. And, as such, all of those new facts should be considered fresh by the court in applying Mitchell in the confines of this case. But it seems to me that what would be required, if we're going to modernize Mitchell or decide that, that we would have to, this panel would have to, sua sponte, call this case en banc and see if our colleagues were willing to do it. Because I'm having problems. I'm seeing your argument as that HERSH was wrongly decided because it did not apply the Mitchell test, and even if I agreed with you, that still seems like it's an en banc matter. And then we've got the Crow case. Footnote 10 says, if it says that the Nevada Bar cases aren't relevant when considering the Oregon Bar, then doesn't it follow that the Oregon Bar case is irrelevant when considering the California Bar? So, if HERSH is precedent, then I don't see that we can do anything. If it's not precedent, it's hard to reconcile other precedent of a three-judge panel without going en banc, unless there's some way to do that without, you know, without disturbing any ruling. It's dicey here. I agree, Your Honor, that there is some tension here in the case law. But the fact of the matter is, the Mitchell test, which is the controlling test for whether or not a state agency is entitled to sovereign immunity, has never, not once, been applied by any court to the California State Bar, not pre-2017 or post. Well, let's say the Mitchell test still needs to be applied. I think we have an Alaska precedent that talks about that the number one factor is not necessarily dispositive, and we can give, we don't, it's not the end-all, be-all. So, that's another precedent that we have to work around, too. So, I'm guessing CalBAR's going to argue, well, that HERSH is presidential, but even if you do have to apply the Mitchell factors, that you can, I think, what is it, Alaska Cargo Transport would say they can still prevail because the number one factor of the state FISC is not dispositive. Certainly, Your Honor. The first factor of whether or not a monetary judgment against the state bar would be satisfied with state funds is not dispositive. It's not the sole factor. There are five factors. Certainly, in different contexts, the state agency may be able to establish it's an arm of the state, even though a monetary judgment wouldn't be actually collected from the state itself. Here, the state bar's argument primarily relies on the fact that at least post-2017, the state is now appointing the state bar's leadership, rather than the leadership being elected by members of the bar association. That change, however, that appointment change, isn't sufficient to transform the state bar into an arm of the state. In Durning versus Citibank, for example, there, this court held that the Wyoming Community Development Authority was not an arm of the state, and it did so even though the governor appointed, with the advice and consent of the state legislature, all of the leadership of that entity. And furthermore, the governor and the state treasurer themselves sat on the board. There was far more control exerted by the state, in that instance, over that entity, than is present here as to the California state bar. Do you know of any other states besides Oregon Bar that don't have sovereign immunity? No, Your Honor. I don't believe that there's any other... Let me ask you this. If we were to disagree with you and hold that the state bar is entitled to sovereign immunity, what's your best argument that Congress validly abrogated that immunity in this instance? Because this court has already held it multiple times, in fact. Including most recently in FIFER, this court reaffirmed that all claims properly arising under Title II don't have to overcome or worry about sovereign immunity, because Congress abrogated that immunity with respect to all Title II claims. So to the extent that there is a proposed revision to that law, that would need to be taken up en banc. In particular, Judge O'Scanlan's consenting opinion in FIFER is on point here to that effect, in which he acknowledges that the panel is bound by this binding precedent in a host of cases that have held that Title II has been validly abrogated. I see I'm running a little bit short on time here, so I would like to briefly address, if I may, the UNRRA Act. Here, the district court held and the state bar presses on appeal for the adoption of a Bright Line Rule that state agencies aren't subject to the California UNRRA Act. California courts have refused to adopt that. In fact, most recently, the California Supreme Court refused to adopt that Bright Line Rule in Brennan v. Superior Court, in which it held that a public school district was not subject to the UNRRA Act in connection with carrying out its constitutionally mandated duty of providing free public education. But it couched the terms of its conclusion in phrases like, quote, generally speaking. And the reason it's doing so is because when a state agency, or any agency, is acting in a manner like a business, for example, engaging in economic transactions with the public, it can still be subject to UNRRA. And that's exactly the circumstance we have here. Mr. Cone and all other bar applicants are paying large sums of money to the state bar, that's an economic transaction, in order to take the bar exam in a facility that should be accommodating disabled bar applicants. As a result, UNRRA does apply to the state bar, or at a minimum, Mr. Cone should be allowed to plead that the state bar is engaged in those business activities in this context, and the claim should move past the motion to dismiss stage. And discovery can be done as far as what is the exact nature of those economic transactions. Unless there are further questions from the panel, I'd like to reserve the remainder of my time for rebuttal. Yes, you'll have three minutes. Thank you. Good afternoon, Your Honors. My name is Brady Dewar for the Pelley State Bar of California. This case is not about whether the state bar is bound by legal and moral obligations to provide access to the bar exam through reasonable testing accommodations. It is. It's bound by detailed rules regarding testing accommodations subject to... Well, if it were about that, you would lose. Because it doesn't sound like you're doing very well to accommodate people with disabilities. Well, Your Honor, I... But give us sovereign immunity. Your Honor, if you look at tables one and two in Pelley's brief, we demonstrate actually all the process that Mr. Cone did receive, and the fact that he was actually granted most of the accommodations that he requested. So we would not agree that injustice occurred in this case, setting aside the sovereign immunity. Well, I've seen other cases that I've handled throughout where the state bar has been taken to task. I mean, one comes to mind where they... Two weeks before Galvet was a quadriplegic, she had sent a check to an agency to pay for her bar dues. The state bar notified her that she couldn't take the bar. So she got a pro bono lawyer, took it to the California Supreme Court, and the Cal bars said, well, if we let her give an exception to her, who is a quadriplegic with a breathing tube in her neck, then we'd have to give an exception to everyone. And the California Supreme Court looked at it about two seconds, but then the person had to spend two weeks fighting that before they could take the bar. So if you don't meet deadlines or people are put on their heels about that, it isn't... I don't think it really affects the sovereign immunity issue, to be honest, even though it gets me a little exercised. I think it could affect the abrogation if we got to abrogation, possibly. Okay, Your Honor. What's at issue here, I think the most salient fact, is succinctly stated by the California Supreme Court in California Rule of Court 9.3. Quote, the state bar serves as the administrative arm of the Supreme Court for admissions matters and in that capacity acts under the authority and at the direction of the Supreme Court. That has not changed. That was true at the time of Hirsch and Lupert, and it's true now. First point, the state bar is entitled to sovereign immunity under the 11th Amendment as an arm of the state. Are you arguing the Mitchell factors now or not? I certainly could, Your Honor. I don't believe that this court should because it is bound by Hirsch and Lupert. Right, but it sounds like you're arguing the Mitchell factors. I certainly could address those. I don't think that the court should. Why don't you address them because it sounds like you're addressing them. I didn't hear you say Hirsch once. Hirsch and Lupert, Your Honor, I apologize. You didn't talk about Mitchell, right? Hirsch didn't even cite Mitchell, right? Hirsch and Lupert did not, but I do want to address counsel's argument that this is somehow dicta. Both of those cases, Lupert and Hirsch, affirmed a dismissal on 11th Amendment grounds, so the holding was necessary to the decision. This is accepted case law. Regardless, we do have very changed circumstances between this structure of the bar when Hirsch and Lupert were decided versus today. We've had since Keller. We've had major changes to the structure. I would not agree that they are in any way relevant because the key fact here is that the State Bar, at that time, has always acted in admissions functions under the authority and at the direction of the Supreme Court. That was true then. That is true now. The only thing that changed is that the- But we don't even know whether that was considered in the Hirsch and Lupert cases. We don't know what was considered in the Hirsch and Lupert cases or in any of the mem dispos that are being discussed. I'm not sure you can give me a case that has applied the Mitchell factors to the California State Bar. Well, certainly not, although the cases- there's not a case in the country that has held that a State Bar is not entitled to 11th Amendment immunity when it's acting in the admissions or disciplinary functions. Lewis, Dubuque, Thiel, and Nichols, the 5th, 6th, 7th, and 11th circuits, all found that the State Bars in those cases were arms of the state, each focusing largely on the state Supreme Court's degree of control over those State Bar activities. Did you concede in your briefing that you lose on the number one Mitchell factor? No, Your Honor. I do not, and I think that Alaska cargo transport is highly instructive. And Your Honor was very astute to point to that case. But I saw somewhere in your brief that you said that you can't prevail on number one. It says the traditional, as traditionally applied, and that was borrowing some of the cases where they speak to the direct liability of the state treasury. But if you look at Alaska, what the court did was say you can't look at the first and the second factors divorced from each other. Where there is such a core government function, an essential government function, and combined with a government control of the means of raising revenue, as there was in Alaska and as there is here, you have to look at the first and second in conjunction. So there, in Alaska, this court held that even though the state was not directly liable, it was functionally liable. This court applied a similar analysis in Belanger v. Madeira Unified School Districts to public schools. And in all honesty, in the Mitchell case itself, which did not discuss each of the Mitchell factors, the court discussed the first factor, and it didn't look at the strict, you know, is the state going to be directly liable? It basically said, oh, these community service districts, community college districts, they get some state funds and some of their fees go up to the state. So they found that the factor met. Here again, because the state bar's ability to charge fees to existing licensees is set at a certain level each year by statute, its ability to charge fees for admissions activities is limited by statute to reasonable fees necessary to cover admissions costs by Business and Professions Code 6063. And given the fact that under Business and Professions Code Section 6008, all property of the state bar is hereby declared to be held for essential public and governmental purposes in the judicial branch of government, the state bar funds are state bar funds. Well, I'm curious. I'm curious. I saw a couple of places in your brief where you said the state bar could do better. Do you think that you're complying with all the accommodations that are required with the disabilities? Do you think you're in compliance on all your cases? Likely, Your Honor, because I don't think that these allegations show deliberate indifference. Largely, when the appellant's brief got into issues of actual Title II liability, it cited non-binding Justice Department regulations. So, Your Honor, I would not agree that in this case there was a Title II violation. So I guess what you say is you're entitled to sovereign immunity, and what someone could do would bring an injunction, and that's how we're going to hold you responsible to comply with the accommodation requirements of the Disabilities Act. Is that supposed to be sufficient for people? I don't think that questions before the court, but there is also a political process. The testing accommodations regime, new rules have gone out for, or just went out for public comment, or excuse me, just returned from public comment. There is appeal to the Supreme Court provided by California Rule of Court 9.13, and, of course, the state courts are open with concurrent jurisdiction over ADA claims. Well, you seem to suggest that we should modernize the Mitchell factors. How do we do that as a three-judge panel? Wouldn't that require going on bond? Well, I think our primary argument is certainly that this court must apply, as unpublished panels have at least seven times since 2007. But those are, I mean, they're persuasive to the degree they're persuasive, but they're not precedential. Correct, Your Honor, but I think that they show, like all the out-of-circuit and district court cases across the country, that this is a settled principle of law. Any state bar, no matter how it's structured, is an arm of the state under the 11th Amendment. In admissions, every case has held that. California now, again, has become even more subject to centralized government control. What does Crow hold? What does Crow hold in Oakland, in Oregon? What does Crow hold? Oregon didn't get sovereign immunity, right? So, you know, Crow is a very different case, and its reasoning just doesn't apply here. Well, I guess I'm saying when you say every state has said the state bar gets sovereign immunity. And they don't in Oregon. So isn't that a little hyperbole on your part? No, Your Honor. Would that be more accurate? No, Your Honor. Crow concerned freedom of speech and freedom of association claims based on the political statements that were made in Oregon's bar membership journal. Now, that court did use rather broad language, but I think it is still an open question whether Oregon, acting on behalf of its Supreme Court in admissions functions, would be entitled to 11th Amendment immunity. That's going to be fought on another day. So it's an open question, and one state and every other state agrees with you? Is that what you're saying? Or what are you saying here? Your Honor, I don't believe I have— It's hyper technical, but when you make sweeping statements, I want to know what that means. Your Honor, so the cases are cited at—excuse me—in our brief at footnotes 14 and 15. It collects district courts and circuit courts. And what I'm saying is that no court has ever held that a state bar is not entitled to 11th Amendment immunity when it's carrying out its admissions or disciplinary functions. Oregon held in the context of political speech made in a bar journal that it did not apply. If we agree with you that you're entitled to sovereign immunity, we still have to look at abrogation, right? Yes, Your Honor. So would it be possible for the plaintiff to amend his complaint to plead a plausible constitutional violation? Your Honor, I don't—Your Honor, the plaintiff was entitled to amend once. The plaintiff, excuse me, did amend once, went through two preliminary injunction motions. The complaint, the first amended complaint, is certainly not lacking in factual allegations. And the fact of the matter is that it has not asserted any constitutional violations. Due process was provided, as demonstrated in Tables 1 and 2 of the brief. He, for all four of his exams, went through the administrative process and had an appeal and had, although he did not take his chance to appeal those to the Supreme Court. I think that the First Circuit's decision in the Sanopi case cited in the brief is very instructive here. It affirmed dismissal of claims against the bar where much less due process was afforded. In that case, the plaintiff received his first notice of denial of his accommodation request only 12 days before the exam and was forced to make sort of an emergency appeal to the Supreme Court. And there the process was found sufficient. As far as the equal process or the substantive claims, this Court made very clear in Giannini that there is no fundamental right to practice law, so he has not stated a constitutional claim. And as far as the third prong of the Georgia test, there has been no showing that Congress validly abrogated the state's sovereign immunity with respect to Title II claims that don't rise to the level of a constitutional violation. So what are the practical consequences of this appeal? Mr. Combs passed the bar now, right? Yes, Your Honor. So what are the practical consequences? He has sovereign immunity. He can't get any money from you, right? Correct, Your Honor. And if we do it in a mem dispo like those other ones, then the next case is going to have to come here and we'll have to listen to these arguments all over again, right? Certainly, Your Honor, although we feel pretty confident in our ability to face those arguments. Okay. Your Honor, I did want to briefly address, since Mr. Cohn did, the business establishment claim. First of all, Eleventh Amendment immunity bars this state law claim against an arm of the state under Pennhurst. This is a state law claim that the Court can't get penned in jurisdiction. In its motion to dismiss, the State Bar stated broadly on page 12 that the State Bar is an arm of the state entitled to Eleventh Amendment immunity, and then at page 21 it stated all of plaintiffs' non-ADA claims should be dismissed with prejudice for lack of subject matter jurisdiction under Rule 12b-1. So although the court below didn't dismiss the state law claim on Pennhurst grounds, that is certainly another reason to affirm the holding. Second, Brennan basically forecloses the claim here on 12b-6 grounds. Brennan walks through both the text of the statute, all of the California decisions on the UNRU, and basically highlights that the focus of the act is on private business establishments, and while it leaves open the possibility that an entity of the state could be a business establishment, it cites Warfield in other cases to say basically they need to be acting as the functional equivalent of a business establishment, such as operating to increase economic value. Here, of course, the State Bar cannot do so, or statute limits its ability to charge fees to the bar exam to the actual cost of the bar exam. And it remains true that there is no citable case holding a government entity subject to UNRU Act claims. Neither of the two new cases cited by Cone in reply change that. The Gibson case is a federal central district of California case from 2002, which relied on the very line of federal public school district cases that Brennan rejected, and the L.A. County Metropolitan Transportation Authority case did not even reach this issue. The district court's dismissal of the UNRU Act claims against the State Bar was proper, and we request respectfully that this court affirm the district court. All right. Thank you, counsel. Thank you, Your Honor. Thank you. I'd like to begin by addressing Alaska Cargo and its ruling as to the first factor of the Mitchell test. The crucial fact in Alaska Cargo that the court relied on was that under Alaska law, the Alaska Railroad Corporation was required to seek money from the state if it needed that money to survive and to continue its operations. Here in California, we have the exact opposite situation with the State Bar. California Business and Professions Code 6008.1 states very clearly that the State Bar's debts are its own, not that of the state. Second, as to Judge Callahan, your question regarding the availability of injunctive relief, it's not actually available here. In fact, Mr. Cohn brought two motions for preliminary injunction, denied for ripeness. Now on appeal, they're moot. For that reason, the concept of relying simply on injunctive relief as a stopgap. They're not available to him, but they could be available to someone at some point if they brought them at the right time, right? Potentially, if the State Bar changed its procedures and started issuing its disability accommodation decisions well in advance of the exam date. But so far, that's not been happening, and that's what's been causing this problem in large part. Third, just to speak briefly as to the possibility of Mr. Cohn completing a constitutional violation in regards to the abrogation analysis, the district court didn't analyze whether or not Mr. Cohn pled that in the first place. It didn't reach that issue because it instead found that there was no protected interest, and therefore there couldn't be. Well, what constitutional violation could you allege if you were given the opportunity to amend? Due process, equal protection violations, Your Honor. In particular, in connection with the October 2020 examination, the State Bar's actions deprived Mr. Cohn of the ability to appeal at all, even among the internal appeal process that the State Bar offers. Fourth, just to speak briefly on Crowe. I thought he passed the October 2020 exam. That's correct, Your Honor. He did pass the October 2020 exam. So where was he denied due process in the prior four? The due process denial arises from the fact that because of the State Bar's practices and procedures, Mr. Cohn was deprived of any meaningful opportunity to seek review of the State Bar's disability accommodation decision. So he had to suffer through an in-person examination during COVID, even while the majority of other test takers were able to take the exam remotely. For this reason, Mr. Cohn respectfully requests that the Court reverse the decision of the District Court and remand with instructions to grant Mr. Cohn leave to file an amended complaint. Thank you. Thank you very much, Counsel. Counsel, Mr. Cohn, the State Bar of California is submitted, and this session of the Court is adjourned for today. I want to thank both counsel for appearing and also for doing pro bono work. The Court definitely appreciates that. It's helpful in adjudicating matters, and thank you for that. All rise.
judges: WARDLAW, CALLAHAN, NGUYEN